Wanamaker, J.
Section 18 of the Bill of Rights of the Ohio Constitution of 1802 contained the very wholesome admonition “That a frequent recurrence to the fundamental principles of civil government, is absolutely necessary to preserve the blessings of liberty.”
It is as true to-day as it was 115 years ago.
The Federal Constitution is clearly a document of delegated powers. True, it was not such in its original form, but by virtue of the 10th Amendment it became such beyond all doubt. This amendment reads:
“The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.”
The same basic doctrine is announced in most of the state constitutions, particularly the Ohio Constitution of 1851, which is still, in this respect, in force. Section 20 of the Bill of Rights reads:
“This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people.”
*47 This same doctrine of delegated power with reference to constitutions very generally prevails when the legislature assumes to confer, within its constitutional grant, certain powers upon various political subdivisions of the state or upon some officer, board or commission of such subdivision.
Sitch grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as may be reasonably necessary to make the express power effective. In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, it follows, as a matter of course, that there can be no implied grant.
In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved not in favor of the grant but against it. It is one of the reserved powers that the legislative body no doubt had, but failed to delegate to the administrative board or body in question.
Now, how stands the case at bar? The whole question pivots on the construction of the statute.
Section 3059, General Code, provides that when the memorial building is to be erected the county commissioners in their resolutions shall state: “That in their opinion it is desirable to erect * * * a memorial building * * * and to expend for such purpose an amount to be named by them not to exceed $250,000 in any one instance.”
*48 Section 3061, General Code, provides, further, that upon the appointment of the memorial association by the governor of Ohio, such association, through its board of trustees, shall “direct the submission to popular vote at the next regular county election of the question of the issue of bonds in the amount so named in the original resolution ” etc.
Section 3062, General Code, provides that the commissioners shall issue the bonds of the county “not to exceed the total sum determined upon in the original resolution of the commissioners.”
Section 3063, General Code, provides that the fund arising from the sale of the bonds shall be placed in the county treasury to the credit of a fund to be known as “the memorial building fund.” The last part of that section reads: “If upon the completion of the memorial building an unexpended balance of the fund remains in the county treasury, it shall be placed and kept to the credit of such sinking fund.”
All these sections taken together are clear, consistent and convincing, demonstrating that the legislature intended the original resolution by the board of county commissioners to be the basis and limitation upon all future proceedings as to a memorial building — that- the voters of the county should know the maximum to be expended so that they might vote intelligently upon the bond issue.
The soundness of such a policy cannot be doubted; neither can the meaning of the simple, straightforward words of the statute. Two hundred and fifty thousand dollars was the largest sum *49 that could be expended by the memorial association through its trustees.
This statute being simple and straightforward in its meaning, there is neither room nor right for judicial construction. The statute speaks for itself.
This was clearly the county’s money and subject to the general depositary law. The statutes clearly provide what shall be done with the county moneys and the earnings upon the same.

Writ denied.

Newman, Matthias and Johnson, JJ., concur.